UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL PARKING SYSTEM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CV 125 CDP |
| | ) | |
| TUCKER PARKING EQUITIES LLC, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

In March 2016, plaintiff Central Parking System, Inc., obtained a $4.1 million judgment against defendants Tucker Parking Equities LLC and Tucker Parking Holdings LLC (collectively, the "Tucker Entities") in a Missouri state court. The Missouri Court of Appeals affirmed the judgment in April 2017. The Tucker Entities do not have sufficient assets to satisfy this judgment. Invoking this Court's diversity jurisdiction, Central Parking brings this action to pierce the corporate veils of the Tucker Entities, alleging that they are sham organizations and the alter egos or instrumentalities of several other entities and individuals. Central Parking claims that these other entities and individuals, also named as defendants in this action, should therefore be liable for the judgment. Because Central Parking has failed to state a claim to pierce the corporate veil, I will grant defendants' motion to dismiss.

## Legal Standard

Defendants seek to dismiss Central Parking's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. When considering a Rule 12(b)(6) motion, I must assume the factual allegations of the complaint to be true and construe them in favor of the plaintiff. *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989). I am not bound to accept as true, however, a legal conclusion couched as a factual allegation. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Twombly,* the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555; *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Specifically, to survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief "that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations must be sufficient to "'raise a right to relief above the speculative level.'" *Parkhurst v.*

*Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

## Background[1]

In 2007, the Tucker Entities purchased a parking garage located at 306-310 North Tucker Boulevard in St. Louis, Missouri, for $4.125 million. At the time of this purchase, Central Parking held a lease to the garage. Central Parking's tenancy ended in March 2015. In anticipation of vacating the garage in 2015, Central Parking arranged in 2014 to make various repairs to the garage, including the installation of a shoring system to repair the garage's failing post-tensioning system. Central Parking spent about $4.1 million in making these repairs.

In March 2015, Central Parking sued the Tucker Entities in state court, seeking a declaration that they were responsible for the costs of the repairs. The Tucker Entities filed a countersuit seeking over $15 million in damages, claiming that Central Parking was responsible for the damage to the garage. In March 2016, after trial on the consolidated action, the state court entered judgment in favor of Central Parking and assessed damages against the Tucker Entities in an amount exceeding $4.1 million. The Missouri Court of Appeals affirmed in April 2017.

Through post-judgment discovery, Central Parking learned that, since March 2015, the Tucker Entities had minimal cash and no sources of revenue. To the extent they maintained a cash balance, it was insufficient to pay the costs incurred

---

[1] The facts set out here are those alleged in the complaint, which I must assume are true for purposes of the motion to dismiss.

during the state-court litigation and any adverse judgment. Between 2015 and 2017, the Tucker Entities obtained over $680,000 in capital contributions from their investors, with the majority of such monies used to prosecute their state-court claims against Central Parking.

Central Parking contends that by maintaining minimal cash and owning near worthless property, the Tucker Entities rendered themselves judgment proof.[2] Central Parking claims that the capital calls and payments made during the state-court litigation show that the owner-investor defendants used the Tucker Entities simply as conduits to allow them to prosecute and possibly obtain a multi-million dollar judgment while insulating themselves from any risk associated with a possible adverse judgment. Central Parking seeks to pierce the corporate veils of both Tucker Parking Equities and Tucker Parking Holdings and to hold their owners-investors liable for the state-court judgment.

**Ownership Structure**

**Tucker Parking Equities, LLC,** is a limited liability company organized and existing under the laws of the State of Delaware. Defendant Telephone Building II, LLC, owns Tucker Parking Equities and is its sole member.[3] Defendants Bryan L.

---

[2] Central Parking claims that attempting to execute on the Tucker Entities' assets "would be futile." (Compl., ECF 1 at para. 34.) It thus appears that Central Parking has not attempted to collect on the judgment.

[3] In their motion to dismiss, defendants aver that an unnamed party, Telephone Building, LLC, actually owns Tucker Parking Equities and that Telephone Building II, LLC – the entity named by

Becker, David R. Becker, Elizabeth Becker Katz, Robert A. Kantor, Francis J. Greenburger, and John E. Day II each have an ownership interest in Telephone Building II.[4]

**Tucker Parking Holdings, LLC,** is a limited liability company organized and existing under the laws of the State of Missouri. Defendants Becker & Becker, LLC, and Robert Kantor own Tucker Parking Holdings.

Central Parking also names "John Does (1-10)" as defendants, claiming they have an ownership interest in the Tucker Entities, Telephone Building, or Becker & Becker, or have received transfers of assets belonging to those entities.

## Discussion

Defendants raise two bases upon which they seek to dismiss Central Parking's complaint: 1) that it fails to adequately explain the acts each individual defendant is alleged to have taken that could result in that defendant's liability; and 2) that it makes only conclusory, formulaic recitations of the elements of a veil-piercing claim and fails to allege facts sufficient to pierce the corporate veil of either Tucker Parking Equities or Tucker Parking Holdings. Because I will dismiss the complaint for failure to state a veil-piercing claim, I need not consider the argument regarding

---

plaintiff – is the sole owner of Telephone Building, LLC. For purposes of a Rule 12(b)(6) motion to dismiss, however, I must assume all factual allegations in the complaint to be true.

[4] In its complaint, Central Parking sets out the percentage of ownership interest each of these defendants is alleged to have in Telephone Building II. The percentages as averred by plaintiff total 100.10 %.

the individual defendants' specific conduct.

As an initial matter, I note that defendants argue that, in this diversity case, the "internal affairs doctrine" requires me to apply Delaware law to plaintiff's veil-piercing claims against defendant Tucker Parking Equities, and Missouri law to the veil-piercing claims against defendant Tucker Parking Holdings.

> The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands.

*Edgar v. MITE Corp.,* 457 U.S. 624, 645 (1982). In the circumstances of this case, however, I need not decide the conflict-of-laws question, because the outcome is the same under either Missouri or Delaware law. *See Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) (no need to undergo choice-of-law analysis when outcome is the same under either state's laws). *See also Yates v. Bridge Trading Co.*, 844 S.W.2d 56, 61-62 (Mo. Ct. App. 1992) (question of whether to apply internal affairs doctrine is flexible depending on the circumstances of case).

Under both Missouri and Delaware law, in order to state a claim for piercing the corporate veil, Central Parking must show: 1) complete domination and control of such a degree that the corporate entity had no will or existence of its own; and 2) that such control of the corporate structure perpetuated a fraud, wrong, or similar

injustice.  *Collet v. American Nat'l Stores, Inc.*, 708 S.W.2d 273, 284 (Mo. Ct. App. 1986); *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999).   These factors apply to piercing the corporate veil of an LLC.  *Hibbs v. Berger*, 430 S.W.3d 296, 306 (Mo. Ct. App. 2014); *In re BH S & B Holdings LLC*, 420 B.R. 112, 133-34 (Bankr. S.D.N.Y. 2009) (applying Delaware law).   Under Missouri law, Central Parking must additionally show that the control and subsequent breach of duty proximately caused the injury.  *Collet*, 708 S.W.2d at 284.

Central Parking has not adequately pled facts sufficient to support an inference that any of the owner-member defendants operated the Tucker Entities with such complete domination and control that the Entities had no separate mind, will, or existence of their own.   As facts, Central Parking alleges only that the Tucker Entities had no cash or source of revenue since March 2015, that their investors transferred approximately $680,380 in capital between 2015 and 2017 to prosecute claims against Central Parking, and that defendant Bryan Becker personally guaranteed the payment of related legal fees.   A principal lending money to the corporation for litigation purposes shows nothing improper.  *See, e.g., Jackson v. O'Dell*, 851 S.W.2d 535, 538 (Mo. Ct. App. 1993).   Nor does a principal's personal guarantee of financing.  *Id.* at 537.   To the extent Central Parking alleges that these capital calls show that the Tucker Entities were

undercapitalized between 2015 and 2017, a shortage of capital occurring well after the Entities' formation is not a reason to pierce the corporate veil. *See 66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32, 41 (Mo. banc 1999) (adequacy of capitalization is measured at the time of incorporation); *Trevino v. Merscorp., Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008) (look to when company was established). Finally, although Central Parking claims there was common ownership and management between the entities, this allegation is not sufficient to find identity of interests to pierce the corporate veil. *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 376 (Mo. Ct. App. 2014).

Central Parking alleges no other facts to support an inference that the owner-member defendants operated the Tucker Entities with such complete domination and control that the Entities had no separate existence. While Central Parking summarily pleads that the defendants (presumably collectively since no specific allegation is made against any individual defendant) used the Entities for an "improper purpose" and as a "sham" to avoid obligations; failed to follow corporate formalities; exercised complete domination and control of the finances, policy, and business practices; and exercised common ownership between the business entities, these conclusory allegations are nothing more than a formulaic recitation of veil-piercing elements. These labels and conclusions supported only by conclusory statements do not state a claim. *See Iqbal,* 556 U.S. at 678.

Conclusory allegations of control with no supporting facts are insufficient to show that the owner-investor-members had such complete domination of the Tucker Entities that the Entities had no separate mind, will, or existence of their own. *See Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 18 (Mo. banc 2013); *Dunne v. Resource Converting, LLC*, No. 4:16 CV 1351 DDN, 2017 WL 2264807, at *10-11 (E.D. Mo. May 24, 2017). *See also Clark v. Lombardi*, No. 2:10CV00066 AGF, 2011 WL 1533021, at *2 (E.D. Mo. Apr. 21, 2011) ("general allegations of substantial control and widespread policies do not satisfy the pleading requirement for piercing the corporate veil."). Central Parking has thus failed to state a claim upon which to pierce the corporate veil of the Tucker Entities.[5]

**Conclusion**

The facts alleged in the complaint – that a business entity that owned a parking garage since 2007 became insolvent in 2015 and received capital contributions from its investors in 2015 to provide for the legal defense and prosecution of claims involving the garage – are insufficient for me to draw a reasonable inference that the owner-investor defendants acted with the requisite degree of control and complete domination over the entity to justify piercing the corporate veil. Central Parking's claim to pierce the corporate veil of Tucker

---

[5] Because Central Parking has not adequately pled a veil-piercing claim against Tucker Parking Equities, I need not reach the question as to how many veils to pierce in order to hold the individual owner-members of Telephone Building II liable for Tucker Parking Equities' judgment. *See In re BH S & B Holdings LLC*, 420 B.R. at 134-35.

Parking Equities and of Tucker Parking Holdings will therefore be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion to Dismiss Plaintiff's Complaint to Pierce the Corporate Veil [26] is **GRANTED,** and plaintiff's complaint is hereby dismissed without prejudice.

A separate Order of Dismissal is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 25th day of October, 2018.